**BRIARPATCH LIMITED, L.P.,** Gerard F. Rubin, Plaintiffs–Appellants,

v.

**PHOENIX PICTURES, INC.,** Michael Medavoy, Defendants–Appellees,

**Geisler Roberdeau, Inc.,** Terence Malick, Defendants.

No. 03–7015.

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 2003.

Decided: June 25, 2004.

Barry L. Goldin, Law Offices of Barry L. Goldin, Allentown, PA, for Plaintiffs–Appellants.

Vincent H. Chieffo, New York, N.Y. (Ronald D. Lefton, Gregory A. Brehm, Greenberg Traurig, LLP, New York, N.Y., of counsel), for Defendants–Appellees.

Before: CARDAMONE, SOTOMAYOR, and KATZMANN, Circuit Judges.

CARDAMONE, Circuit Judge.

Because this appeal involves the rights to films and plays, it is appropriate and helpful to begin by listing the cast of characters. Plaintiff Briarpatch Limited, L.P. (Briarpatch) is a limited partnership;

plaintiff Gerard F. Rubin is the sole limited and winding up partner of Briarpatch. Defendant Geisler Roberdeau, Inc. is a dissolved New York corporation owned and controlled by Robert Geisler and John Roberdeau. Defendant Phoenix Pictures, Inc. (Phoenix) is a producer of motion pictures; defendant Morris Medavoy (not "Michael" as is incorrectly listed in the caption) is the founder and chairman of Phoenix. Defendant Terrence Malick (not "Terence" as is incorrectly listed in the caption) is a writer and director of films including "The Thin Red Line."

As this case illustrates, chicanery is no stranger to some of those engaged in the film industry. This litigation centers on Rubin's contention that Geisler and Roberdeau conned him and Briarpatch out of proceeds from "The Thin Red Line" and various other motion picture and theater productions. Rubin claims they did this in concert with Phoenix, Medavoy, and Malick, and that they used Geisler Roberdeau, Inc. as a conduit for their ill–gotten gains.

## BACKGROUND

Briarpatch, the limited partnership, was formed in 1994 to develop, produce, present, and exploit various entertainment related projects. While Rubin was the sole limited partner, there were five general partners that, under the partnership agreement, had "complete, exclusive and unqualified control of all aspects of the business of the [p]artnership," and the "unrestricted right to sell or assign, and to pledge, mortgage or otherwise hypothecate, any [of the partnership's projects], either in whole or in part, without obtaining the consent of Rubin." All five general partners were corporations owned and controlled by Robert Geisler and John Roberdeau, meaning that those two individuals had complete control over Briarpatch's business. All the general partner corpora-

tions are presently dissolved and Rubin, as noted, is now the designated winding up partner for Briarpatch. Defendant Geisler Roberdeau, Inc. is also owned and controlled by Geisler and Roberdeau, but it is not connected to Briarpatch.

Rubin claims to have contributed more than $6 million of his own funds towards Briarpatch's entertainment projects, with the expectation that he would reap the rewards (in the form of partnership distributions) if the projects were successful. One of the projects was to culminate in a motion picture called "The Thin Red Line," based on an existing novel by James Jones. The partnership used Rubin's money to acquire the motion picture rights to "The Thin Red Line," and to pay defendant Malick to turn the novel into a screenplay.

Before this project could be completed, Geisler and Roberdeau purported to sell the rights to "The Thin Red Line" to defendant Phoenix. Instead of distributing the proceeds from this sale among Briarpatch's partners, Geisler and Roberdeau kept the proceeds for themselves in the accounts of their personal corporation, Geisler Roberdeau, Inc. After the sale, Phoenix oversaw the completion of "The Thin Red Line" motion picture, and earned a substantial profit from it. The movie was nominated for seven Academy Awards.

In December 1998 Rubin and Briarpatch sued Geisler and Roberdeau in New York State Supreme Court, stating causes of action for fraud and fraudulent concealment, breach of fiduciary duty, conversion and trover, unjust enrichment, and an accounting. Plaintiffs alleged Geisler and Roberdeau had used their control over Briarpatch to divert to themselves benefits and opportunities generated by Briarpatch's entertainment projects, including "The Thin Red Line."

After a trial, the state court granted plaintiffs a declaratory judgment, constructive trust, and an equitable lien with respect to Briarpatch's entertainment projects. The state court decision dated July 12, 1999 found that "The Thin Red Line," and certain other projects, were owned by the plaintiff partnership and did not belong to Geisler, Roberdeau, their affiliated corporations, or the Briarpatch general partners. The court granted plaintiffs a judgment for the $1.5 million that Geisler and Roberdeau had converted from the proceeds paid to them by Phoenix for "The Thin Red Line," and a permanent injunction directing, among other things, that Geisler and Roberdeau turn over all of Briarpatch's property to Briarpatch and provide an accounting. The New York Supreme Court entered judgment on this decision on October 14, 1999 and ordered that a referee be assigned to monitor the turning over of property and the accounting. Geisler and Roberdeau appealed this judgment in 1999 and that appeal is apparently still pending.

Plaintiffs commenced the present action in the New York Supreme Court on August 18, 1999. They asserted claims against defendants Malick, Phoenix, Medavoy, and Geisler Roberdeau, Inc. for conspiring in and aiding and abetting Geisler and Roberdeau's breach of fiduciary duty to Briarpatch. Plaintiffs also brought claims against Geisler Roberdeau, Inc. for trover and conversion, and unjust enrichment; against Phoenix for unjust enrichment and a declaration of rights; and against Malick for breach of contract, unjust enrichment, and a declaration of rights. Plaintiffs sought over $4 million in damages.

Defendants responded by removing the suit to the United States District Court for the Southern District of New York (Sweet, J.) on September 10, 1999. Plaintiffs then moved pursuant to 28 U.S.C. § 1447(c) to remand the action to State Supreme Court. The district court denied the motion and dismissed the claims against the only non-diverse party, Geisler Roberdeau, Inc., in an opinion and order dated March 1, 2000. On June 26, 2001, the district court denied plaintiffs leave to amend their complaint to add additional parties, and on November 6, 2001, it dismissed the claims against Malick based on his settlement with plaintiffs. Finally, the district court granted summary judgment in favor of Phoenix and Medavoy on October 30, 2002. With no claims remaining, it entered a judgment dismissing the complaint in its entirety on December 9, 2002. From this judgment and these orders plaintiffs appeal.

## DISCUSSION

■ Plaintiffs have presented two challenges for us to resolve on this appeal: first, the denial of their motion to have the case remanded to the New York State Supreme Court and, second, the district court's grant of summary judgment in favor of defendants Phoenix and Medavoy. We note plaintiffs also purport to challenge the denial of their motion to amend their complaint. But, since this issue is only mentioned in the beginning of their brief and never argued or noted again, we deem it abandoned. *See, e.g., Smalls v. Batista,* 191 F.3d 272, 277 (2d Cir.1999).

■ We start with the remand motion. Mindful that a district court's erroneous failure to remand does not, by itself, necessitate reversal, we view the critical issue to be whether the district court had subject matter jurisdiction at any time before it rendered judgment. *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 75–78, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

■ When reviewing the district court's assumption of subject matter jurisdiction, we accept its findings of fact unless they are clearly erroneous, while examining questions of law *de novo*. *See McGinty v. New York*, 251 F.3d 84, 90 (2d Cir.2001). There are two possible grounds on which the district court's jurisdiction might have been anchored in this case: diversity of citizenship and copyright law. If any of plaintiffs' claims can be based on these jurisdictional grounds, their other claims possibly may be based on supplemental jurisdiction.

## I Diversity of Citizenship

Congress has given the federal district courts original jurisdiction over civil actions between "citizens of different States" where, as here, the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a) (2000). The citizenship requirement for diversity jurisdiction has been interpreted to mean complete diversity so that each plaintiff's citizenship must be different from the citizenship of each defendant. *See Caterpillar*, 519 U.S. at 68, 117 S.Ct. 467.

■ It is undisputed that plaintiffs in this case are New York citizens for jurisdictional purposes. It is also undisputed that defendant Geisler Roberdeau, Inc. is a New York citizen, but that the other defendants are not. Thus, if Geisler Roberdeau, Inc. was a properly joined defendant, complete diversity is lacking. The district court relied on the doctrine of fraudulent joinder to rule that Geisler Roberdeau, Inc. was not a properly joined defendant.

■ The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction. Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims

against that defendant could be asserted in state court. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.1998). The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff. *Id.*

In this case, defendants argue that plaintiffs would be collaterally estopped from asserting their claims against Geisler Roberdeau, Inc. in New York court based on their prior action against Geisler and Roberdeau individually. They make this contention as part of their assertion of fraudulent joinder, and not as part of any motion to dismiss based on the affirmative defense of *res judicata*. Because a *res judicata* affirmative defense was not raised with respect to the claims alleged against Geisler Roberdeau, Inc., our inquiry must assess whether defendants satisfied their burden for proving fraudulent joinder under *Pampillonia*, 138 F.3d at 461. Viewed in this light, we do not think defendants have met their burden to show that New York's law on collateral estoppel—*i.e.*, issue preclusion—would have stood in the way of plaintiffs' claims had this action remained in state court.

In the prior action, the New York court determined that Geisler and Roberdeau had converted $1.5 million from the proceeds they received for "The Thin Red Line." It further held that plaintiffs could recover this amount from Geisler and Roberdeau jointly and severally. In the present action, plaintiffs' complaint asserts that Geisler Roberdeau, Inc. is liable for carrying out this same conversion of funds on Geisler and Roberdeau's behalf. This position is not inconsistent with the state court's prior determinations. By determining that Geisler and Roberdeau as individuals had converted the funds, the court in the prior action did not rule out the

possibility that their eponymous corporation had played a role in the conversion, or that it was vicariously liable for the conversion. Indeed, the prior determination was based on a finding that the proceeds in question were transferred to the Geisler Roberdeau, Inc. accounts. If issue preclusion were to enter into the present analysis, it would help plaintiffs, not impede their quest for a remand.

Defendants attempt to circumvent this problem by citing to *Ritchie v. Landau*, 475 F.2d 151 (2d Cir.1973). In that case, we applied New York law to preclude a corporate employee from asserting a claim against the corporation's president based on a prior New York judgment against the corporation itself. *Id.* at 153–55. The prior New York judgment had confirmed an arbitration award against the corporation for a bonus owed the employee. *Id.* at 153. While the employee had sought $2,112,000 in the arbitration proceeding, the arbitrators had determined that he was owed only $200,000. *Id.* The corporation had satisfied this judgment, and the employee now proceeded in federal court against the president directly, claiming that he was still owed $1,912,000 ($2,112,000 minus $200,000) for the bonus. *Id.* In affirming the dismissal of this cause of action based on issue preclusion, we ruled that the bonus issue had been entirely litigated in the arbitration proceeding, and that the arbitrators had determined that the employee was owed $200,000—neither more nor less. *Id.* at 155–56.

The case at bar is very different because plaintiffs' prior state court judgment has never been satisfied. To the extent that New York would give preclusive effect to issues determined in the prior action, it might preclude plaintiffs from relitigating the issue of how much money Geisler and Roberdeau converted from "The Thin Red Line" proceeds. But this would not require a dismissal of the claims against Geisler Roberdeau, Inc. Unlike the employee in *Ritchie*, who had already fully recovered the prior judgment and could only therefore argue for a higher figure, plaintiffs have not recovered *any* of their prior award. Therefore their claim is still viable even were the amount owed to be taken out of dispute. The state court in the prior action had no occasion to determine whether Geisler Roberdeau, Inc. is itself liable for the converted money (it was not a party to that action), and defendants have not demonstrated that New York would preclude plaintiffs from litigating that issue in the present action. They have therefore failed to meet their burden under *Pampillonia*, 138 F.3d at 461, of proving fraudulent joinder by clear and convincing evidence.[1]

In the absence of fraudulent joinder, the district court had no grounds to overlook Geisler Roberdeau, Inc.'s citizenship, or dismiss plaintiffs' claims against it. From this it logically follows that the district court lacked diversity jurisdiction. If such was the sole basis of its jurisdiction, it perforce should have remanded this case to state court.

## II Copyright Jurisdiction

Nonetheless, jurisdiction could have rested in the district court on the presence of a copyright claim. Section 1338(a) of Title 28 gives the district courts original and exclusive jurisdiction over civil actions "arising under" any Congressional act relating to patents, plant variety protection, copyrights, and trademarks. 28 U.S.C. § 1338(a). For an action to arise

---

1. Should one ask why we are not looking at claim preclusion rather than issue preclusion here, the answer is that defendants have failed to even raise claim preclusion, let alone prove that it serves as a basis for fraudulent joinder.

under one of these acts, the plaintiff's well-pleaded complaint must establish either that the act creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of law under the act. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (interpreting § 1338(a) in the patent context). The claims established by the well-pleaded complaint must necessarily be determined from the plaintiff's statement of his or her own claim, not including statements raised in anticipation or avoidance of possible defenses that may be interposed. *See id.*

Plaintiffs have not expressly pleaded copyright violations anywhere in their complaint. They have alleged a number of state law claims, however, that could potentially be preempted by the Copyright Act. In particular, the district court held that plaintiffs' unjust enrichment claim against Phoenix is preempted, although it did not reach the question of whether this preemption created federal jurisdiction.

### A. *Preemption Doctrine*

■ Preemption does not necessarily confer jurisdiction, since it is generally a defense to plaintiff's suit and, as such, it does not appear on the face of a well-pleaded complaint. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). It is only when based on the doctrine of "complete preemption," that the preemptive force of federal law is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Until the Supreme Court's recent decision in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), we would have hesitated to extend the complete preemption doctrine into the copyright field. The Supreme Court had never done so, and its previous applications of the doctrine appeared limited. *See, e.g., Metro. Life*, 481 U.S. at 65–67, 107 S.Ct. 1542. We had understood the doctrine to be restricted to "the very narrow range of cases where Congress has clearly manifested an intent to make specific action within a particular area removable." *Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir.1998). Although the Fourth Circuit had extended the complete preemption doctrine to § 301(a) of the Copyright Act, *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir.1993), the point was debatable.

### B. *Effect of* Anderson

This analytical framework has been changed by *Anderson*, 539 U.S. at 8–11, 123 S.Ct. 2058. The complaint in that case alleged state law usury claims against a national bank chartered under the National Bank Act. Section 85 of the National Bank Act, 12 U.S.C. § 85, specifies the substantive limits on the rates of interest that national banks may charge, while § 86 of the Act, 12 U.S.C. § 86, sets forth the elements, statute of limitations, and remedies for usury claims against national banks. In holding that the National Bank Act renders state law usury claims against national banks removable, the Supreme Court used these two sections to distinguish between normal preemption and complete preemption.

The Court noted that § 85, on its own, preempts state law claims against national banks for charging interest that is within the § 85 limits. *Anderson*, 539 U.S. at 9, 123 S.Ct. 2058. Such preemption, however, is not complete, and thus would not create jurisdiction, because § 85 does not provide

an exclusive federal cause of action. *Id.* Section 86, on the other hand, does provide an exclusive federal cause of action for usury claims against national banks and therefore does fall within the complete preemption doctrine so as to create federal jurisdiction. *Id.* at 9–10, 123 S.Ct. 2058. In so holding, the Court was willing to overlook the fact that § 86 was promulgated in 1864, before removal to federal courts was even possible. It ruled that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Id.* at 9 n. 5, 123 S.Ct. 2058.

■■ Given the Supreme Court's approach in *Anderson,* we conclude that it means to extend the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action. *See* Richard H. Fallon, Jr. *et al.,* The Federal Courts and the Federal System 22 (5th ed. Supp.2003) (reaching the same conclusion). The Copyright Act does just that. Like the National Bank Act in *Anderson,* the Copyright Act lays out the elements, statute of limitations, and remedies for copyright infringement. *See* 17 U.S.C. §§ 501–513 (2000). It therefore follows that the district courts have jurisdiction over state law claims preempted by the Copyright Act. The question we now turn to is whether any of plaintiffs' claims are in fact preempted.

## C. *Preemption Doctrine Applied to Present Claims*

■ The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102

and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. *See* 17 U.S.C. § 301(a); *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 848 (2d Cir.1997). The first prong of· this test is called the "subject matter requirement," and the second prong is called the "general scope requirement." *See Nat'l Basketball Ass'n,* 105 F.3d at 848.

■ The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works. *Id.* at 848–49. These categories encompass literary works and motion pictures, 17 U.S.C. § 102(a), including those based on preexisting works, 17 U.S.C. §§ 101, 103. A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense. *See Nat'l Basketball Ass'n,* 105 F.3d at 848–50.

■ The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of .the exclusive rights provided by federal copyright law. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992). In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display. *See* 17 U.S.C. § 106; *Computer Assocs.,* 982 F.2d at 716.

■ Further, the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim. *See Nat'l Basketball Ass'n,* 105 F.3d at 851; *Computer*

*Assocs.*, 982 F.2d at 716. To determine whether a claim is qualitatively different, we look at "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Computer Assocs.*, 982 F.2d at 716. Moreover, we take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim. *See Nat'l Basketball Ass'n*, 105 F.3d at 851. Awareness or intent, for instance, are not extra elements that make a state law claim qualitatively different. *Id.; Computer Assocs.*, 982 F.2d at 717. On the other hand, a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty, *see id.*, or possession and control of chattels, *see Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

### 1. *Unjust Enrichment Claim Against Phoenix*

■ Given this two-pronged test, we are satisfied that plaintiffs' unjust enrichment claim against Phoenix is preempted by the Copyright Act. This claim applies to "The Thin Red Line" project, the heart of which is a motion picture based on a screenplay, which was derived from a novel. Both the motion picture and the screenplay are derivative works protected under 17 U.S.C. § 103. The novel is a literary work protected under 17 U.S.C. § 102. To the extent that the project includes non-copyrightable material, such as ideas, these are not sufficient to remove it from the broad ambit of the subject matter categories. *See Nat'l Basketball Ass'n*, 105 F.3d at 848–50.

Plaintiffs seek to protect their alleged interests in "The Thin Red Line" under the theory that Phoenix was unjustly enriched by turning Jones' novel and Malick's screenplay into a motion picture without compensating Briarpatch or obtaining Briarpatch's permission. From this, it is clear that the specific right they are trying to enforce is the right of adaptation—*i.e.*, the right to prepare or authorize preparation of a derivative work based on a novel or screenplay. *See* 17 U.S.C. § 106(2).

■ The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *See, e.g., Clark v. Daby*, 300 A.D.2d 732, 751 N.Y.S.2d 622, 623 (2002). Under plaintiffs' theory of the case, the act that allegedly satisfies the second and third elements of unjust enrichment is the act of turning Jones' novel and Malick's screenplay into a motion picture. This act would, in and of itself, infringe the adaptation rights protected by § 106(2) (assuming these rights belong to plaintiffs).

To satisfy the first element of unjust enrichment, plaintiffs also allege that Phoenix was enriched by its act. While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim. Like the elements of awareness or intent, the enrichment element here limits the scope of the claim but leaves its fundamental nature unaltered. *Cf. Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 637–38 (6th Cir.2001) (holding that an unjust enrichment claim met the general scope requirement); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985) (same); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright

§ 1.01[B][1][g] (2003) ("[A] state law cause of action for unjust enrichment or *quasi* contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.").

### 2. *Declaratory Judgment Claim Against Phoenix*

 We are also satisfied that plaintiffs' declaratory judgment claim against Phoenix is preempted. The analysis here is even more straightforward, since that cause of action simply seeks a declaration that Phoenix has no rights in "The Thin Red Line" project. As discussed above, this project fits within the broad subject matter categories protected by the Copyright Act. Further, plaintiffs' theory appears to be that Briarpatch owned the rights to turn the novel and the screenplay into a motion picture, and Phoenix never lawfully acquired these rights. In other words the claim focuses solely on the adaptation rights protected under § 106(2).

### 3. *Claims Involving Breach of Fiduciary Duty*

 With respect to plaintiffs' claims involving breach of fiduciary duty (the conspiracy and aiding and abetting claims that make up counts one and two of the complaint), we are equally certain that there is no copyright preemption. While these claims focus on "The Thin Red Line" project, the underlying right they seek to vindicate is the right to redress violations of the duty owed to a partnership by those who control it. In other words, the fact that these claims require a finding that there was a breach of fiduciary duty to begin with adds an extra element that makes the claims qualitatively different from a claim of copyright infringement. *See Computer Assocs.*, 982 F.2d at 717.

### 4. *Claims Against Geisler Roberdeau, Inc.*

Plaintiffs asserted a number of claims against Geisler Roberdeau, Inc.: the two claims discussed above dealing with breach of fiduciary duty, as well as a cause of action for trover and conversion and one for unjust enrichment. The district court dismissed these claims based on the doctrine of fraudulent joinder, and since we vacate that ruling, these claims are now back in play. A question will therefore arise as to whether these claims are subject to copyright preemption. With respect to the breach of fiduciary duty claims, it is clear from the above discussion that, no matter how these claims are presented, they will not be preempted.

Regarding the other causes of action, the answer is less obvious. *Cf. Harper & Row*, 723 F.2d at 200–01 (concluding that a conversion claim may or may not be preempted depending on the theories under which it is asserted). Because these causes of action were dismissed at the start of litigation, we lack briefing on precisely how plaintiffs intend to develop their theories. *Cf. id.* (relying on plaintiff's briefs, in addition to the complaint, in ascertaining theory for preemption purposes). We therefore decline to rule on the issue and instead leave it for the district court to address in the first instance on remand.

### 5. *Claims Against Malick*

The only claims that we have not yet discussed are those originally asserted against Malick. While the claims against Malick were dismissed based on a settlement between him and plaintiffs and are no longer contested, the question of whether they were preempted could be relevant to our jurisdictional inquiry, since the existence of one preempted claim could provide supplemental jurisdiction for hearing

others. That is not so in this case, however, because we have already held that the unjust enrichment and declaratory judgment claims against Phoenix are preempted, and because we further hold in a moment that these claims on their own can support supplemental jurisdiction over the remaining claims. We therefore decline to rule on whether the claims asserted against Malick also could have supported supplemental jurisdiction.

### III Supplemental Jurisdiction

■ For those claims that were not within the district court's copyright jurisdiction, one further question remains: Does the fact that some claims were within the court's copyright jurisdiction bring the other ones within its supplemental jurisdiction? As we have already suggested, the answer is yes.

■ Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to "form part of the same case or controversy under Article III of the United States Constitution." A state law claim forms part of the same controversy if it and the federal claim "derive from a common nucleus of operative fact." *Cicio v. Does,* 321 F.3d 83, 97 (2d Cir.2003) (quoting *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997)). This is so even if the state law claim is asserted against a party different from the one named in the federal claim. *See* 28 U.S.C. § 1367(a) (2000); *Kirschner v. Klemons,* 225 F.3d 227, 239 (2d Cir.2000).

All of plaintiffs' claims against Geisler Roberdeau, Inc., Phoenix, and Medavoy unquestionably derive from a common nucleus of operative fact, because they all deal with the purported sale of "The Thin Red Line" to Phoenix. The district court therefore has power to hear the claims relating to breach of fiduciary duty even though these claims do not fall within the court's copyright jurisdiction. It also has power to hear the trover and conversion and unjust enrichment claims against Geisler Roberdeau, Inc., even if it determines that these claims do not fall within its copyright jurisdiction.

The fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C. § 1367(c). This decision is left to the exercise of the district court's discretion. *See Kirschner,* 225 F.3d at 239; *cf. Motorola Credit Corp. v. Uzan,* 322 F.3d 130, 137 (2d Cir.2003) (remanding for district court to consider § 1367(c) because even though it had already done so once, the landscape of the case had since changed).

### IV Merits

Finally, as we turn to the merits we are tempted to salvage what we can of the district court's work. That court has already reached the merits of many of the claims in this case, and while it erred in basing its jurisdiction on diversity of citizenship, we have held that it did possess the power to hear all of plaintiffs' claims.

■ We are nonetheless unable to fully uphold the trial court's decisions on the merits for two reasons. First, with regard to the unjust enrichment and declaratory judgment claims against Phoenix, the court based its dismissal on the wrong rationale. It correctly determined that these claims were preempted by the Copyright Act, but it then went on to analyze whether plaintiffs had come forward with sufficient evidence to make out copyright claims. This might seem like a logical

approach given that we evade the well-pleaded complaint rule for jurisdictional purposes by creating the fiction that complete preemption places a federal claim on the face of a plaintiff's well-pleaded complaint. *See Williams*, 482 U.S. at 393, 107 S.Ct. 2425. But it is incorrect. Instead, once a district court determines that a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action. *See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 132 (2d Cir.2003) (Newman, J., concurring); *Romney v. Lin*, 94 F.3d 74, 84 (2d Cir.1996). In other words, the complete preemption doctrine ensures that a federal forum will be available to decide that a plaintiff's claim is preempted; but it does not allow a federal court to decide claims that have not actually been pleaded.

Second, with regard to the causes of action dealing with breach of fiduciary duty, our holdings thus far change the landscape to such an extent that we feel it prudent to allow the district court to revisit its decision. In particular, our holding that the claims against Geisler Roberdeau, Inc. were erroneously dismissed at the start of litigation leaves us wondering whether plaintiffs would have been able to gather more evidence to withstand summary judgment had that corporation been kept in the action as a party. The district court is in the best position to assess this question.

### CONCLUSION

Accordingly, we hold that the district court correctly denied plaintiffs' motion for a remand to state court. But, that decision should have been on the basis of its copyright jurisdiction, not on its diversity jurisdiction. It also correctly dismissed the unjust enrichment and declaratory judgment claims against Phoenix, although it wrongly based this conclusion on plaintiffs' lack of proof, rather than plaintiffs' failure to state a cause of action. As a consequence, we affirm the district court's denial of the motion to remand this case to state court, although our affirmance is on grounds different from those relied on by the district court. We also affirm the district court's dismissal of the unjust enrichment and declaratory judgment claims against Phoenix, although again for reasons different from those the district court relied upon.

We also rule the district court erred in dismissing the claims against Geisler Roberdeau, Inc., and much of the case must be reevaluated in light of this defendant's continued presence. Based on the record, we conclude the district court has copyright jurisdiction over the unjust enrichment and declaratory judgment claims against Phoenix, but that it does not have copyright jurisdiction over any of the breach of fiduciary duty claims, and that it has power under 28 U.S.C. § 1367(a) to hear all of the claims over which it lacks copyright jurisdiction.

On remand, the district court must determine, based on further briefing, whether it has copyright jurisdiction over the trover and conversion and unjust enrichment claims against Geisler Roberdeau, Inc. It must also exercise its discretion under 28 U.S.C. § 1367(c) to determine whether to hear the claims over which it has only supplemental jurisdiction. Finally, even if the court chooses to exercise supplemental jurisdiction over the breach of fiduciary duty claims against Phoenix and Medavoy, it cannot rely on its previous decision to grant summary judgment against plaintiffs unless it first determines that plaintiffs' access to evidence was not hindered by the erroneous dismissal of Geisler Roberdeau, Inc.

Accordingly, for the reasons stated, we affirm the denial of the motion to remand the case to state court on the grounds that the district court had copyright jurisdiction; we vacate the district court's December 9, 2002 judgment dismissing the complaint, its October 30, 2002 order granting summary judgment in favor of Phoenix and Medavoy, and its March 1, 2000 order dismissing the claims against Geisler Roberdeau, Inc. We remand this case with instructions to the district court that it proceed in a manner not inconsistent with this opinion.

Affirmed in part, vacated in part, and remanded.