The **FRONTIER GROUP,**
**INC., Plaintiff,**

v.

**NORTHWEST DRAFTING & DESIGN,**
**INC. et al., Defendants.**

**No. 3:05CV01741(DJS).**

United States District Court,
D. Connecticut.

June 29, 2007.

David Lee Weiss, Cohen & Acampora, East Haven, CT, for Plaintiff.

Charles F. Brower, Brower, Organschi & D'Andrea, LLP, Torrington, CT, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SQUATRITO, District Judge.

The Plaintiff, the Frontier Group, Inc. ("the Plaintiff"), commenced this action against Northwest Drafting & Design, Inc., Mark E. Robinson, Sr. ("Robinson"),[1] and Martial Grondin ("the Defendant") in the Connecticut Superior Court for the Judicial District of Litchfield at Litchfield. In the Complaint, the Plaintiff alleges that the Defendant violated the ownership rights the Plaintiff had in certain architectural plans, drawings and specifications ("the Plans") by converting those rights to his own benefit, to the exclusion of the Plaintiff. The Plaintiff also alleges that the Defendant's conversion and use of the Plans to construct a single family residence was a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42–110b et seq. ("CUTPA").

On November 14, 2005, the Defendant filed a Notice of Removal, in which the Defendant claimed that this court had original jurisdiction over this case because the Plaintiff's action is, in fact, a civil action for copyright infringement. (See dkt. # 1.) The Plaintiff subsequently moved to remand this case to the Connecticut Superior Court, maintaining that the Complaint set forth only state law claims, not federal copyright claims. (See dkt. # 10.) The Defendant opposed the motion to remand, maintaining that the Plaintiff's state law claims were preempted by federal copyright law. (See dkt. # 12.) The court, agreeing with the reasons set forth in the Defendant's opposition, denied the motion to remand. (See dkt. # 14.) Now pending is the Defendant's motion for summary judgment (dkt.# 19) pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Defendant's motion for summary judgment (dkt.# 19) is **GRANTED.**

## I. FACTS

The background facts in this case are relatively brief. In March and April 2003, the Plaintiff prepared and created the Plans. Pursuant to a construction contract, dated April 15, 2003, between the Plaintiff and Wayne and Barbara Shields ("the Shields"), the Plans were to be used for the construction of a single family residence owned by the Shields and located at Lot 26, West Hyerdale Drive, Goshen, Connecticut ("the Property"). Under the terms of the construction contract, the Plaintiff retained all rights of ownership over the Plans, and all copies of the Plans were to be returned to the Plaintiff upon termination or completion of the construction of the Property.

In June 2004, the Shields transferred ownership of the Property to the Defendant. At the time of this transfer, the Plaintiff had performed construction on the Property pursuant to the construction contract and in accordance with the Plans, including site work, grading, foundation excavation, and the pouring of concrete

---

1. The Plaintiff's claims against Northwest Drafting & Design, Inc. and Mark E. Robinson, Sr. have been settled, leaving Martial Grondin as the only remaining defendant.

footings and foundation walls. The Plaintiff claims that, in June or July 2004, the Defendant acquired possession of the Plans from the Shields without the consent or authorization of the Plaintiff; failed or refused to return the Plans to the Plaintiff; and used the Plans to prepare a new set of architectural plans for the purposes of obtaining a building permit and completing construction for a single family residence located in the area of the Property where the Plaintiff had already constructed the foundation and footings. According to the Plaintiff, the Defendant had actual notice of the Plaintiff's ownership interest in the Plans as set forth in the construction contract, yet nevertheless provided the Plans to Northwest Drafting & Design, Inc. for the purposes of preparing the new set of plans.

In his affidavit, the Defendant admits that he did purchase the Property from the Shields. (*See* dkt. # 22 ¶ 2.) The Defendant asserts that, as an inducement for him to buy the lot, the Shields agreed to hire Robinson, a construction draftsman, to draw a set of plans that would comport with the footings already poured by the Plaintiff. (*See id.* ¶ 3.) The Defendant further states that he worked with Robinson to create a set of construction plans, which were used, with subsequent modifications, to construct a dwelling on the Property. (*See id.* ¶ 4.)

In addition, the Defendant has submitted the affidavit of James Hiltz ("Hiltz"), who states that he acted as the real estate broker for the sale of the Property from the Shields to the Defendant. (*See* dkt. # 23 ¶ 2.) According to Hiltz, the Shields and the Plaintiff had a dispute over the construction on the Property, which resulted in the Shields' desire to sell the lot. (*See id.* ¶ 3.) Hiltz asserts that he was aware of the Plans created by the Plaintiff. (*See id.* ¶ 4.) Hiltz further asserts that

after the Shields had agreed to sell the Property to the Defendant, he and Wayne Shields took the Defendant to meet Robinson, who was then shown the Plans. (*See id.* ¶ 5.) According to Hiltz, Robinson, although having seen the Plans, was asked to draw a new set of plans for the Defendant "so that [the Defendant] could build a house on the existing foundation and there would be no issue about [the Defendant] using [the Plans]." (*See id.*)

## II. DISCUSSION

The Plaintiff alleges that the Defendant converted the Plaintiff's ownership and possession rights in the Plans, and that the Defendant violated CUTPA. The Defendant maintains that the Plaintiff's action is, in reality, a copyright infringement case, as the Plaintiff's claims are preempted by federal copyright law. The court denied the Plaintiff's motion to remand, which argued that the Plaintiff's claims are not copyright claims, but claims brought pursuant to Connecticut law. Nevertheless, the Plaintiff still argues that its claims are not preempted by federal law and that this is not a copyright case. The court shall first address the issue of preemption, and then whether the Defendant is entitled to judgement as a matter of law.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect

to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. ANALYSIS

Although the court denied the Plaintiff's motion to remand, which asserted that the Plaintiff's claims were not preempted by copyright law, the Plaintiff still argues that its claims are not preempted, and that Connecticut, not federal, law applies to this case. The court sees how the Plaintiff might have misunderstood the court's intended result in denying the motion to remand, as the court did not provide its own analysis, but rather adopted the reasoning of the Defendant. In order to clarify any ambiguities caused by the court's previous order, and in the interests of fairness and justice, the court shall set forth why the Plaintiff's claims are preempted by the Copyright Act.

## 1. Applicability of "Complete Preemption" Doctrine to the Copyright Act

 The Plaintiff, in both the memorandum in support of its motion to remand and the memorandum in opposition to summary judgment, asserts that, as it has alleged violations of Connecticut law only, the "well-pleaded complaint rule" saves its claims from being preempted by federal law. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

 "A case aris[es] under federal law ... if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, —— U.S. ——, 126 S.Ct. 2121, 2131, 165 L.Ed.2d 131 (2006) (internal quotation marks omitted). "Generally, a complaint that pleads only state law causes of action may not be removed to federal court even where Congress has chosen to regulate the entire field of law in the area in question." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir.1998). Thus, "[p]reemption does not necessarily confer jurisdiction, since it is generally a defense to plaintiff's suit and, as such, it does not appear on the face of a well-pleaded complaint." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304 (2d Cir. 2004) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d

55 (1987)). "It is only when based on the doctrine of 'complete preemption,' that the preemptive force of federal law is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (quoting *Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. 2425 (1987)).

■ The Plaintiff first argues that the doctrine of "complete preemption" has not been found to apply to copyright law. The court disagrees. It is true, as the Plaintiff states in its opposition memorandum, that the Supreme Court had previously applied the doctrine of "complete preemption" to a narrow range of cases where Congress had "clearly manifested an intent to make specific action within a particular area removable." *Id.* (internal quotation marks omitted); *see Metro. Life*, 481 U.S. at 65–67, 107 S.Ct. 1542. As the Second Circuit points out, however, "[t]his analytical framework has been changed by [the Supreme Court's decision in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8–11, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) ]. . . ." *Briarpatch*, 373 F.3d at 304. The Second Circuit described *Anderson* as follows:

> The complaint in that case alleged state law usury claims against a national bank chartered under the National Bank Act. Section 85 of the National Bank Act, 12 U.S.C. § 85, specifies the substantive limits on the rates of interest that national banks may charge, while § 86 of the Act, 12 U.S.C. § 86, sets forth the elements, statute of limitations, and remedies for usury claims against national banks. In holding that the National Bank Act renders state law usury claims against national banks removable, the Supreme Court used these two sections to distinguish between normal preemption and complete preemption.

> The Court noted that § 85, on its own, preempts state law claims against national banks for charging interest that is within the § 85 limits. *Anderson*, 539 U.S. at 9, 123 S.Ct. 2058. . . . Such preemption, however, is not complete, and thus would not create jurisdiction, because § 85 does not provide an exclusive federal cause of action. *Id.* Section 86, on the other hand, does provide an exclusive federal cause of action for usury claims against national banks and therefore does fall within the complete preemption doctrine so as to create federal jurisdiction. *Id.* at 9–10, 123 S.Ct. 2058. . . . In so holding, the Court was willing to overlook the fact that § 86 was promulgated in 1864, before removal to federal courts was even possible. It ruled that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Id.* at 9 n. 5, 123 S.Ct. 2058. . . .

*Id.* at 304–05.

Given the language in *Anderson*, the Second Circuit has concluded that the Supreme Court "means to extend the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." *Id.* at 305. "The Copyright Act does just that. Like the National Bank Act in *Anderson*, the Copyright Act lays out the elements, statute of limitations, and remedies for copyright infringement. *See* 17 U.S.C. §§ 501–513 (2000). It therefore follows that the district courts have jurisdiction over state law claims preempted by the Copyright Act." *Id.*

### 2. Applicability of the Copyright Act to the Plaintiff's Claims

■ "The Copyright Act exclusively governs a claim when: (1) the particular

work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Id.* "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Id.*

"The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Id.* Under the Copyright Act, "[c]opyright protection subsists … in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). Included in the works of authorship protected by the Copyright act are "architectural works." *Id.* § 102(a)(8). "A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Briarpatch,* 373 F.3d at 305.

"The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Id.* "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." *Id.* In addition, "the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim." *Id.* To determine whether a state law claim is "qualitatively different" from a copyright claim, the court must "look at what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Id.* at 306 (internal quotation marks omitted). The Second Circuit takes "a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Id.* "Awareness or intent, for instance, are not extra elements that make a state law claim qualitatively different…. On the other hand, a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty … or possession and control of chattels…." *Id.*

### a. Conversion

First, the court finds that the Plans of the Plaintiff satisfy the first prong of the preemption test, the "subject matter requirement." The Plans, as architectural plans, drawings, and specifications, are works of authorship, fixed in a tangible medium of expression, that fall within the ambit of at least one of the categories of copyrightable works under the Copyright Act. *See* 17 U.S.C. § 102(a)(8) ("architectural works").

Second, the court finds that the second prong of the test, the "general scope requirement," is satisfied here. The Plaintiff's first claim is that the Defendant committed the tort of conversion. As stated by the Connecticut Supreme Court, "[t]he tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Deming v. Nationwide Mut. Ins. Co.,* 279 Conn. 745, 770, 905 A.2d 623 (2006) (internal quotation marks omitted). "Thus, [c]onversion is some unauthorized

act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm." *Id.* (internal quotation marks omitted). "The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." *Id.* (internal quotation marks omitted).

In the court's estimation, the Plaintiff's claim is not a conversion claim. Although the Plaintiff uses the term "conversion" in the Complaint and asserts that this is an action for conversion under Connecticut law, the use of the word "conversion" is not, by itself, enough for the Plaintiff's claim to actually sound in conversion. In addition, although the Plaintiff's opposition memorandum references the "wrongful withholding" of the Plans, the Plaintiff's Complaint does not seek the return of the Plans. Instead, the Complaint reads that the Plaintiff "has been injured and damaged by having expended substantial time and expense in producing the Plans and has not been compensated for same by Defendant[ ] despite the Defendant['s] utilization of same," (*see* dkt. #1, Complaint ¶ 10), and asks that the court award only money damages, (*see id.* p. 3). It is clear from the Complaint, then, that the Plaintiff alleges acts of reproduction, or otherwise wrongful usage, of the Plans. This conduct constitutes infringement of the exclusive rights provided by federal copyright law, which preempts a conversion claim based on such conduct.

The issue, then, is whether the Plaintiff's conversion claim includes "extra elements" that make the claim qualitatively different from a copyright infringement claim. If the Plaintiff's conversion claim is based solely on the Defendant's alleged reproduction (or other use) of the Plans, the claim contains no "extra elements" and therefore is preempted by copyright law. *See A Slice of Pie Prods., LLC v. Wayans Bros. Entm't,* 392 F.Supp.2d 297, 317 (D.Conn.2005) ("a viable conversion claim would be preempted by the Copyright Act [if] it is based solely on copying, i.e. wrongful use, not wrongful possession."); *Moser Pilon Nelson Architects, LLC v. HNTB Corp.,* No. 05 CV 422(MRK), 2006 WL 2331013, at \*12 (D.Conn. Aug.8, 2006). On the other hand, if the Plaintiff's claim is based on the wrongful physical possession of chattels (i.e., the Plans), it alleges "extra elements" and avoids preemption. *See A Slice of Pie,* 392 F.Supp.2d at 317 n. 8; *see also Harper & Row Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

In looking at the Plaintiff's submissions, the court finds that the Plaintiff's conversion claim does not contain the "extra elements" necessary to avoid preemption. The Plaintiff has been careful to use the word "possession"; for example, in the Complaint, the Plaintiff maintains that the Defendant committed the tort of conversion "[b]y obtaining possession of, duplicating and utilizing the Plans without the consent or authorization of the Plaintiff...." (*See* dkt. #1, Complaint ¶ 9.) When looking at the damages alleged and relief sought, however, the Plaintiff does not seek relief for the actual physical deprivation of the Plans, but for the subsequent actions taken with the Plans. That is, the Plaintiff states that it "has been injured and damaged by having expended substantial time and expenses in producing the Plans and has not been compensated for same by the Defendant[ ] despite the Defendant[']s utilization of same." (*Id.* ¶ 10.) This language indicates that the Plaintiff is not seeking the recovery of the physical copies of the Plans held by the Defendant, but rather damages for the

subsequent actions taken with the Plans by the Defendant. Therefore, the Plaintiff's conversion claim fails to meet the "extra element" test, and is thus preempted by the Copyright Act.[2]

### b. CUTPA

The court must analyze the Plaintiff's CUTPA claim according to the same preemption principles used for the Plaintiff's conversion claim. "CUTPA, by its own terms, applies to a broad spectrum of commercial activity." *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 492, 656 A.2d 1009 (1995). CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). With regard to establishing a CUTPA violation, the Connecticut Supreme Court has stated the following:

It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3)

whether it causes substantial injury to consumers, [competitors or other businesspersons].... All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Ventres v. Goodspeed Airport, LLC,* 275 Conn. 105, 155, 881 A.2d 937 (2005) (internal quotation marks omitted).

 Because the Plaintiff's CUTPA claim, like the conversion claim, involves the Plans created by the Plaintiff, the first prong of the preemption test (the "subject matter requirement") is satisfied here for the same reasons that it was satisfied for the conversion claim. *See supra* Part II. B.2.a. Thus, the court must determine whether the Plaintiff's CUTPA claim actually alleges the "extra elements" needed to avoid preemption. As the Second Circuit has noted, "unfair-competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test...." *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993). In addition, "[l]egally sufficient claims based on a theory of 'passing off' will also escape preemption." *A Slice of Pie,* 392 F.Supp.2d at 315 (citing *Warner Bros., Inc. v. Am. Broad. Co.,* 720 F.2d 231, 247 (2d Cir.1983)).[3] On the other hand, the Copyright Act "preempts unfair competition and misappropriation claims grounded

---

**2.** In a case with facts that are very similar to this case (where the plaintiff drew up architectural plans that were subsequently used by another person to build a house), the Connecticut Superior Court came to the same conclusion, i.e., that the plaintiff's conversion claim under Connecticut law was preempted by the Copyright Act because the claim did not seek relief for the actual physical deprivation of the architectural plans, but for the subsequent actions taken with those plans. *See R.D. Wolf, Inc. v. Brancard,* No.

CV010507650S, 2004 WL 728936, at *3–5 (Conn.Super.Ct. March 8, 2004).

**3.** As the Supreme Court has stated, "[p]assing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 27 n. 1, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003).

solely in the copying of a plaintiff's protected expression." *Kregos,* 3 F.3d at 666.

The Second Count of the Complaint reads as follows:

> Based upon the foregoing unfair and deceptive actions of the Defendant[ ] ... in converting the Plans to [his] own use and benefit without the consent or authorization of the Plaintiff ... and utilizing the Plans ... to complete the construction of the single family residence on the Property, the Defendant[ ] ha[s] violated [CUTPA] ... and the Plaintiff has suffered an ascertainable loss of money and property as a result thereof.

(Dkt. # 1, Complaint ¶ 11.) The court notes that the Plaintiff does not allege that it had a confidential or fiduciary relationship with the Defendant, nor does the Plaintiff allege that the Defendant violated a trade secret. The wrongful (or, as the Plaintiff states, "unfair and deceptive") conduct alleged here is the same conduct that served as a basis for the Plaintiff's conversion claim—the unauthorized copying and use of the Plans. Allegations of such conduct, without more, are governed by federal copyright law exclusively, regardless of the a plaintiff's attempts to sound a claim in state unfair trade practices law. The Plaintiff's CUTPA claim contains no element to qualitatively differentiate it from those areas protected by copyright. Consequently, the Plaintiff's CUTPA claim fails to meet the "extra element" test, and is thus preempted by the Copyright Act.

### 3. The Copyright Act's Preemptive Effect Over the Plaintiff's Claims

The court has concluded that both the Plaintiff's conversion claims and the Plaintiff's CUTPA claim are preempted by the Copyright Act because they sound in federal copyright law, and are, in fact, claims for copyright infringement. Now, a determination must be made as to how the Copyright Act's applicability to this case affects the Plaintiff's claims.

"Under [the Copyright Act,] 17 U.S.C. § 411(a), 'no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title.'" *Well–Made Toy Mfg. Corp v. Goffa Intern. Corp.,* 354 F.3d 112, 115 (2d Cir.2003) (quoting 17 U.S.C. § 411(a)). "This registration requirement is jurisdictional." *Id.* In the Statement of Undisputed Facts section of the Report of Parties' Planning Meeting filed with the court, the Plaintiff admits that it does not have a copyright on the Plans. (*See* dkt. # 17.) Because the Plaintiff does not have a copyright on the Plans, it cannot sustain an action for copyright infringement, which is what the court has deemed this case to be. Consequently, the Defendant's motion for summary judgment is **GRANTED.**

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (dkt.# 19) is **GRANTED.** Judgment in favor of Martial Grondin shall enter on all counts of the Plaintiff's Complaint. The Clerk of the Court shall close this file.

**SO ORDERED.**