**A SLICE OF PIE PRODUCTIONS, LLC,**

v.

**WAYANS BROTHERS ENTERTAINMENT, et al.**

**No. 3:04 CV 1034 JBA.**

United States District Court, D. Connecticut.

Sept. 21, 2005.

---

Charles Scott Schwefel, Jerrold G. Neeff, The Bostonian Law Group, Boston, MA, for A Slice of Pie Productions, LLC.

Louis P. Petrich, Leopold, Petrich & Smith, P.C., Los Angeles, CA, Glenn M. Cunningham, Jason M. Price, Shipman & Goodwin, Hartford, CT, Louis P. Petrich, Leopold, Petrich & Smith, P.C., Los Angeles, CA, Alan Neigher, Sheryle Levine, Byelas & Neigher, Westport, CT, for Wayans Brothers Entertainment, et al.

***Ruling on Defendants' Motions to Dismiss, Motions to Transfer Venue, and Plaintiff's Motion for Leave to Amend its Complaint [Doc. 26], [Doc. 28], [Doc. 33], [Doc. 35], [Doc. 52], [Doc. 58]***

ARTERTON, District Judge.

Plaintiff A Slice of Pie Productions, LLC ("Slice of Pie") brings claims under the United States Copyright Act and the Lanham Act against Defendants Revolution Studios, LLC ("Revolution") and Sony Pictures Entertainment, Inc. ("Sony"); claims of conversion, breach of implied contract, breach of fiduciary duty, idea misappropriation, and violation of the Lanham Act against Defendant Wayans Brothers Productions ("Wayans"); claims of breach of implied contract and breach of fiduciary duty against Defendant Gold/Miller Company ("Gold"); and claims under the Connecticut Unfair Trade Practices Act ("CUTPA") against all defendants.[1]

Defendant Gold has brought motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2), and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on which relief

---

1. In the complaint, plaintiff named defendants as Revolution Studios, Inc., Sony Pictures Entertainment, Inc., Wayans Brothers Entertainment, and The Gold/Miller Agency, respectively. Defendants have identified themselves as the parties named above.

may be granted. The other defendants have brought Rule 12(b)(6) motions to dismiss all of the claims against them, except the copyright claims and the breach of implied contract claim against Wayans, either because they are preempted by the Copyright Act or for failure to state a claim.[2] All defendants have also moved to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1406(a) because venue is improper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) or, alternatively, to transfer venue to the Central District of California pursuant to § 1404(a) because the convenience of the parties and interests of justice require it. For the reasons that follow, defendants' § 1406(a) and § 1404(a) motions to transfer are denied, defendant Gold's motion to dismiss is granted in part, and the motions of defendants Wayans, Revolution, and Sony to dismiss are granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Jon Coppola, Jason Coppola, and Mario Pittore, the principals of Slice of Pie, wrote a screenplay entitled *Johnny Bronx,* which they registered with the Writers Guild of America and with the United States Copyright Office. The screenplay involves an African American FBI agent who disguises himself as a white Italian American in order to infiltrate the mafia.

On or about October 22, 1999, following contact by plaintiff's agent, Ron Singer, from the Geddes Agency, Gold requested a copy of plaintiff's screenplay. Gold purportedly requested the screenplay on Wayans' behalf and plaintiff submitted the screenplay to Gold with the hope that Wayans would review the screenplay and decide to make a movie based upon it. Plaintiff alleges that Gold did indeed give the screenplay to Wayans and that at least one of the Wayans brothers reviewed it. Gold subsequently notified plaintiff that Wayans was not interested in the screenplay.

In July 2001, plaintiff submitted its screenplay to the Gersh Agency ("Gersh"), again with the hope that Wayans would review it, and as a result of contact from Gersh, Gold requested a copy from Gersh on behalf of Wayans and Gersh provided plaintiff's screenplay to both Gold and Wayans. Again, Gold notified plaintiff that Wayans was not interested in the screenplay.

Subsequently, defendants Wayans, Revolution, and Sony produced and distributed a film entitled *White Chicks* in which two African American male FBI agents disguise themselves as white women. *White Chicks* was released on June 23, 2004 and was shown in theaters nationwide, including theaters in Connecticut. As a result of

---

**2.** Originally, plaintiff's Third Amended Complaint alleged violations of the Copyright Act, violations of the Lanham Act, idea misappropriation, conversion, and unjust enrichment against Wayars, Revolution, and Sony; claims of breach of contract and breach of fiduciary duty against Gold; and CUTPA violations against all defendants. Plaintiff voluntarily dismissed the idea misappropriation and unjust enrichment claims against all defendants, and the conversion claims against Revolution and Sony. Plaintiff has filed a motion for leave to amend its complaint to: add factual allegations, reinstate the idea misappropria-

tion claim as to Wayans, add claims for breach of implied contract and breach of fiduciary duty against Wayans, and dismiss the Copyright Act claim against Wayans. The Court grants plaintiff's motion for leave to amend [Doc. # 58] except as to the proposed claim for breach of fiduciary duty against Wayans (Count VI) because, as discussed below, such claim is not legally viable on the allegations of this case. Accordingly, the Court considers the instant motions in light of the Proposed Fourth Amended Complaint [Doc. # 58, Ex. A].

the release of *White Chicks*, funding that plaintiff had secured to independently produce a film based on the *Johnny Bronx* screenplay was withdrawn.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

■ Gold has moved to dismiss the state law claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Paragraph 8 of the Proposed Fourth Amended Complaint alleges original subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1125, and the Copyright Act, Title 17 of the United States Code and 28 U.S.C. § 1338(a),[3] diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(3), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Section 1367 provides that where a district court has original jurisdiction over claims in an action, it shall "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction, that they form part of the same case or controversy." 28 U.S.C. § 1367(a). As courts have interpreted this provision, district courts have supplemental jurisdiction over any claim that "derive[s] from a common nucleus of operative fact." *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213–14 (2d Cir.2004). The Lanham Act and Copyright Act claims are based on Wayans' alleged copying of plaintiff's screenplay and the production and distribution of the movie based on that screenplay. The state law claims arise from Gold's role in procuring plaintiff's screenplay on behalf of Wayans. Although the

facts giving rise to the federal claims are not identical to the facts giving rise to the state claims, they all relate to Slice of Pie's efforts to have Wayans review and use its screenplay. *See Jones*, 358 F.3d at 208 (holding Equal Credit Opportunity Act claims and debt collection counterclaims to be sufficiently linked because both arose "from the plaintiffs' decisions to purchase Ford cars"). Accordingly, the state claims in this case arise from the same operative nucleus of facts as the federal claims and it is appropriate to exercise supplemental jurisdiction.

### B. Personal Jurisdiction

Defendant Gold has also moved to dismiss for lack of personal jurisdiction pursuant to Fed R. Civ. P. 12(b)(2). "Where a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of showing through actual proof that the court has jurisdiction over the defendant." *Divicino v. Polaris Indus.*, 129 F.Supp.2d 425, 428 (D.Conn.2001) (citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566–67 (2d Cir.1996)). Prior to jurisdictional discovery, a plaintiff "need only allege facts constituting a prima facie showing of personal jurisdiction." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). All pleadings and affidavits are construed in the light most favorable to the plaintiff. *See id.*

"Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nem-*

---

**3.** 28 U.S.C. § 1338(a) provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

*ours & Co.*, 47 F.3d 79, 81 (2d Cir.1995). The constitutional test is whether the defendant had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation and citation omitted). A state can assert "general jurisdiction . . . only where [a defendant's] contacts are continuous and systematic." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.2002) (internal quotation and citation omitted). The Court will consider "the totality of the circumstances rather than any mechanical criteria." *Inset Sys., Inc. v. Instruction Set Inc.*, 937 F.Supp. 161, 165 (D.Conn. 1996).

Gold argues that the Court lacks personal jurisdiction under Conn. Gen.Stat. § 33–929 because Gold has never transacted or solicited business in Connecticut and because it does not have sufficient minimum contacts with the State of Connecticut. No jurisdictional discovery has yet taken place.

■ The Connecticut long arm statute provides that "[e]very foreign corporation shall be subject to suit in this state . . . on any cause of action arising as follows: . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business[.]" Conn. Gen.Stat. § 33–929(f). The term "arising . . . out of" has been interpreted broadly to mean that the cause of action at hand and the defendant's business contacts with the state do not have to "be causally connected." *Thomason v. Chemical Bank*, 234 Conn. 281, 292, 661 A.2d 595, 601 (Conn.1995). If the defendant repeatedly solicits business from Connecticut, "a plaintiff need only demonstrate that the defendant could reasonably have anticipated being hauled into court here by *some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." *Id.* at 296, 661 A.2d at 603 (emphasis in original).

■ In the instant case, Slice of Pie alleges that Gold is a large international agency with clients around the world, that disputes over screenplays occur frequently in the entertainment industry, and that Gold has transacted business with other Connecticut-based production companies. Further, Slice of Pie claims in its Proposed Fourth Amended Complaint that Gold requested its screenplay from its Connecticut-based agent, Ron Singer. Given Slice of Pie's light burden prior to jurisdictional discovery, these allegations are sufficient to establish personal jurisdiction over Gold. Drawing all reasonable inferences in the light most favorable to Slice of Pie, it can be inferred that Gold repeatedly solicits scripts from Connecticut for its clients such that it was aware that disputes might arise in Connecticut from its or its clients' mishandling of any of those scripts, and that Gold solicited plaintiff's script from Connecticut. Under the standard articulated in *Thomason*, plaintiff in this case has met his light burden under the long-arm statute at this juncture.

Gold's repeated solicitation of scripts and clients in Connecticut also satisfies the minimum contacts required under *International Shoe* and its progeny. Accordingly, Gold's 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied without prejudice to renew if discovery demonstrates the absence of personal jurisdiction based on the foregoing.

### C. *Motions to Transfer*

### 1. *Motions to Transfer Pursuant to 28 U.S.C. § 1406(a)*

■ All defendants have moved to transfer venue to the Central District of

California pursuant to 28 U.S.C. § 1406(a) on the grounds that venue is improper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), which governs venue in copyright cases. Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Under § 1400(a), venue is proper where "the defendant or his agent resides or may be found." For the purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Under § 1391(b), venue is proper either where "any defendant resides, if all defendants reside in the same state [or where] a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

Since all defendants in this case are corporations, venue is proper under both § 1400(a) and § 1391(b) if the Court has personal jurisdiction over all defendants. Because the Court has found that personal jurisdiction exists over Gold, and because personal jurisdiction is not contested by Revolution, Sony, or Wayans, at this stage venue is proper under both § 1400(a) and § 1391(a) and defendants' § 1406(a) motions to transfer are denied.

### 2. Motions to Transfer Pursuant to 28 U.S.C. § 1404(a)

Defendants also move to transfer under 28 U.S.C. § 1404(a), even if venue is held proper in Connecticut, "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a).

■ "[Section 1404(a)] is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (internal quotation and citation omitted). Factors to be considered in determining whether a § 1404(a) transfer is warranted include convenience of the parties and witnesses, availability of process to compel unwilling witnesses to testify, location of the relevant documents, locus of the operative facts, relative means of the parties, the forum's familiarity with governing law, plaintiff's choice of forum, and the interests of justice. *U.S. Surgical Corp. v. Imagyn Medical Techs., Inc.*, 25 F.Supp.2d 40, 46 (D.Conn.1998). As movants, the burden is on defendants to demonstrate that transfer is justified. *Id.* (citing *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989)).

Defendants claim that California is the locus of operative facts, that litigation in Connecticut is inconvenient for them as well as for unidentified non-party witnesses, and that California law applies to the common law claims. Plaintiff counters that the Court should retain the case in Connecticut because a transfer would only shift inconvenience from defendants to plaintiff. While plaintiff allows that the few depositions it needs will be taken in California, plaintiff argues that the cost of fully litigating the case there would likely bankrupt it.

A case may be transferred to any venue where it could have been brought initially. *Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Because all defendants are California corporations and all have their principal places of business in California, *see* Fourth Am. Compl. [Doc. # 58, Ex. A] at ¶¶ 2–6, all defendants are subject to personal jurisdiction in California and venue would be

proper in the Central District of California.

### Locus of Operative Facts

■ "The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Charter Oak Fire Ins. Co. v. Broan–Nutone, L.L.C.*, 294 F.Supp.2d 218, 220 (D.Conn. 2003). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Id.* at 220 (internal quotation and citation omitted).

There is some disagreement among the parties as to which facts should be considered to have given rise to the complaint. Plaintiff claims that, because of the nature of a copyright claim, the location of the production of the *White Chicks* film is irrelevant. Defendants, on the other hand, claim that for copyright claims, the location where plaintiff wrote its original script is irrelevant. Neither argument is dispositive. Without either the creation of the original screenplay or the production of *White Chicks*, this claim would not exist and thus the locations of both of those events will factor into the Court's analysis. Here, plaintiff's screenplay was written in Connecticut and Gold allegedly requested plaintiff's screenplay be sent to it from Connecticut. On the other hand, Wayans both wrote the screenplay for *White Chicks* and received plaintiff's screenplay from Gold in California, and defendants primarily produced the film in California, and thus allegedly copied or infringed there.

Ultimately, while some important events occurred in Connecticut, it seems clear that the majority took place in California. Thus, the locus of operative facts weighs somewhat in favor of venue in California.

### Plaintiff's Choice of Forum

■ The plaintiff's choice of forum is generally given considerable weight. *In re Warrick*, 70 F.3d 736, 741 (2d Cir.1995); *Charter Oak Fire Ins. Co.*, 294 F.Supp.2d at 219. Defendants argue, however, that here, since Connecticut has little material connection with the litigation, the plaintiff's choice of forum should not be accorded much weight. In *Charter Oak Fire Ins. Co.*, the court held that when the only connection to the forum is the plaintiff's residence, its choice of forum is not controlling. *Id.* at 220. Here, however, some material events occurred in Connecticut, most notably the writing of the screenplay. Plaintiff's choice of forum therefore weighs somewhat in favor of retaining the case in Connecticut. Moreover, there is presumably some psychological comfort to litigating in one's home forum, a benefit the Court is reluctant to deny plaintiff unless the balance of factors tips persuasively in favor of transfer. *See generally H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F.Supp.2d 234, 241 (D.Conn.2003) ("Unless compelling circumstances warrant otherwise, plaintiff's choice of forum should control.") (citing *Filmline (Cross–Country) Prods. v. United Artists Corp.*, 865 F.2d 513, 515 (2d Cir.1989) and *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir.2001)).

### The Forum's Familiarity with Governing Law

■ The parties dispute whether California or Connecticut law should apply to the state common law claims, with defendants arguing for California law—a factor defendants claim supports transfer to California. The parties recognize that federal copyright law will apply wherever venue lies.

Federal courts apply the choice of law rules of the forum state. *Md. Cas. Co. v.*

*Cont'l Cas Co.*, 332 F.3d 145, 151 (2d Cir. 2003). Connecticut utilizes the most significant relationship test as set out in the *Restatement (Second) Conflict of Laws* to determine governing law in both contract and tort claims. *See Interface Flooring Sys., Inc. v. Aetna Casualty & Surety Co.*, 261 Conn. 601, 608 & n. 17, 804 A.2d 201, 205 (2002); *Williams v. State Farm Mutual Auto. Ins. Co.*, 229 Conn. 359, 370, 641 A.2d 783, 789 (1994).

The relevant factors in determining which state has the most significant relationship with the claim include:

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Restatement (Second) Conflicts of Laws* § 6(2). While the parties have not identified any significant difference between California and Connecticut law, California has a more developed body of law applicable to the film industry, for example its recognition of industry-specific implied contract claims as set forth in *Desny v. Wilder*, 46 Cal.2d 715, 299 P.2d 257 (1956), and asserted in plaintiff's Proposed Fourth Amended Complaint. *See* Proposed Fourth Amended Complaint [Doc. # 58, Ex. A] ¶¶ 56–63. Application of California law in this case related to the movie industry would thus serve the interests of predictability and uniformity of result. The protection of the parties' justified expecta-

tions arising from industry norms and practices also supports the application of California law, particularly since the alleged contract arose out of Gold's solicitation from California and the contract with Wayans is a *Desny* contract.

As to the tort claims, Slice of Pie has sustained injury in Connecticut as well as any other state where *White Chicks* was released, though the alleged tortious conduct largely took place in California. The relationship between the parties appears to be centered in California, based on allegations of Gold's failure to notify plaintiff that Wayans was using its script, as well as the alleged infringement itself, accomplished by the creation and production of *White Chicks*. Given the California-centric nature of these claims, plaintiff had no reasonable expectation that Connecticut law would apply simply because it sustained some injury in its home state. Thus, the justifiable expectations of the parties weigh in favor of application of California law to the contract and tort claims in this case.

Defendants argue that the application of California law strongly favors transferring the case to California. While it is hardly a reason to retain the case in Connecticut, that California law applies to some of the claims does not necessarily warrant transfer. "Federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F.Supp.2d 130, 132 (D.Conn.1998).[4] This case is at heart a copyright case; no novel or complex issue of California state law applies, and the forum's familiarity with governing law thus weighs only slightly in favor of transfer.

---

4. Indeed, while a *Desny* breach of implied contract claim is specific to California law, even this type of claim has been handled before by the Second Circuit. *See Whitfield v. Lear*, 751 F.2d 90 (2d Cir.1984).

### Convenience of the Parties

 Since this case involves California defendants and a Connecticut plaintiff, one side or another will experience inconvenience at the time of trial. "In a motion to transfer, a court does not seek merely to transfer inconvenience from one party to the other." *Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.*, 821 F.Supp. 848, 850 (D.Conn.1993). While the greater number of defendants obviously demonstrates a collective greater inconvenience for them, a venue transfer here would do nothing more than shift that inconvenience to plaintiff.

### Convenience of the Witnesses

 The convenience of the witnesses, especially non-party witnesses, is "[t]he single most important factor" in a § 1404(a) motion to transfer. *See Sutton v. Rehtmeyer Design Co.*, 114 F.Supp.2d 46, 50 (D.Conn.2000). Defendants identify several of their employees who may be called to testify, and plaintiff recognizes that any depositions of California residents will be conducted in California. Since all identified California witnesses are employees of defendants, who would be deposed in California, the convenience of witnesses is only implicated at the trial stage.

Defendants have not identified any non-party California witnesses. They have speculated that, since there is high turnover in the film industry, it is likely that some of their current employee-witnesses will not be subject to employer requirements or subpoena at the time of trial in Connecticut, and presentation of their testimony by deposition will be less effective. While the existence of material witnesses who are not within the subpoena power of the Court and are unwilling to travel to Connecticut would weigh substantially in favor of a transfer, the mere speculation that there may come to be such witnesses

cannot be weighed in the calculus at this time. *See e.g., Pitney Bowes, Inc.*, 33 F.Supp.2d at 131–32 (holding that transfer was not warranted where it was not clear that identified former employees of the defendant would be unwilling to testify).

### Access to Sources of Proof

 "Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Charter Oak Fire Ins. Co.*, 294 F.Supp.2d at 221. While all of the documents relating to the production of *White Chicks* are located in California, defendants have not shown that retaining the case in this district would hinder or burden their access to these sources of proof.

### Relative Means of the Parties

 "The relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider." *Charter Oak Fire Ins. Co.*, 294 F.Supp.2d at 222 (internal citations omitted). Where litigation in a foreign state would have a disparate financial impact on one of the parties, the Court may base its decision to transfer or retain the case on the relative financial means of the parties. *See Aetna Life & Casualty v. Owen*, No. 3:04 CV 817(WWE), 2004 WL 2381744, at *3–4 (D.Conn. Oct. 13, 2004) (holding that a transfer to Georgia was warranted largely because litigation in Connecticut would have been a huge financial burden on an individual Georgia defendant while plaintiff—"a large corporation that operates throughout the United States"—would have been easily able to afford litigation in Georgia). In this case, plaintiff has filed an affidavit stating that it has only two thousand dollars in its corporate bank account and that forcing it to litigate in California may bankrupt it. Defendants,

on the other hand, are large corporations presumably able to afford litigation in Connecticut, and have not suggested otherwise. While plaintiff's limited litigation resources may be expended in California discovery irrespective of venue, both discovery and trial in California would be an even greater financial drain on plaintiff and the relative means of the parties therefore weighs strongly in favor of retaining the case in Connecticut.

### Interests of Justice

██ Defendants have claimed that, although the Central District of California and the District of Connecticut are both extremely busy courts, the case should be transferred because there is no point in bogging down the District of Connecticut docket when the case has no material connection with the State. While this case has connections to Connecticut—plaintiff and its principals reside in Connecticut, plaintiff's screenplay was written in Connecticut, the loss to plaintiff occurred in Connecticut, and *White Chicks* was shown in Connecticut—it is true that Connecticut has no particular interest in the outcome of this case that outweighs California's interest in developing rules of engagement in the California-based film industry. This factor therefore weighs in favor of transfer.

### Summary

██ In balancing the factors in this case, the Court could exercise its discretion in favor of either party. However, because the burden is on defendants to establish the need for a transfer, because plaintiff's choice of forum is entitled to substantial deference, and because of the relative financial inequalities between the parties, the balance tips slightly in favor of plaintiff at this stage. Defendants' § 1404(a) motions to transfer are denied.

### D. Substantive Motions to Dismiss

Defendants have moved to dismiss all claims, except the copyright and contract claims against Wayans. In a motion to dismiss under Rule 12(b)(6), the Court "merely assess[es] the legal feasability of the complaint, [it does] not ... assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation and citation omitted). The Court takes well-pleaded facts as true and draws all reasonable inferences in favor of plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

#### 1. Count VI: Breach of Implied Contract Against Gold

Count VI alleges breach of implied contract for Gold's failure, as Wayans' agent, to notify Slice of Pie that Wayans was using its screenplay to create *White Chicks*. According to the Proposed Fourth Amended Complaint, Gold requested plaintiff's screenplay from plaintiff's agent, Ron Singer, in 1999 and thereafter

provided it to Wayans. In 2001, Gold again asked for the screenplay from the Gersh agency so that Wayans might review it, this time requesting that Gersh provide the screenplay directly to Wayans. The allegation that Gold requested plaintiff's screenplay permits the inference that Gold solicited plaintiff's screenplay.

■■■■■ "An implied-in-fact contract is founded on a meeting of the minds, which ... is inferred, as a fact, from conduct of the parties showing in light of the surrounding circumstances, their tacit understanding." *Competitive Techs. v. Fujitsu Ltd.,* 286 F.Supp.2d 1118, 1146 (N.D.Cal. 2003) (internal quotation and citation omitted). In this case, plaintiff argues that pursuant to film industry custom and practice, when an agent solicits a script for its client, that solicitation creates an implied promise that the agent will notify the screenwriter if the client uses the screenplay. Pl's Opp. Memo [Doc. # 56] at 5–6 (citing *Desny v. Wilder,* 46 Cal.2d 715, 299 P.2d 257 (Cal.1956)). Since Gold is alleged to be an established agent in the entertainment industry that routinely handles scripts on behalf of its clients, evidence of the parties' conduct in the context of evidence of industry custom and practice could indicate mutual assent and formation of an implied contract between Gold and Slice of Pie. Accordingly, Gold's motion to dismiss Count VI of the complaint against it for breach of implied contract is denied.

### 2. Count VI: Breach of Fiduciary Duty Against Gold

Count VI of the Fourth Amended Complaint alleges breach of fiduciary duty against Gold also for its failure to notify plaintiff that Wayans was using its script. Plaintiff claims that the parties' relationship was in fact characterized by plaintiff's trust and confidence in Gold. Since Slice of Pie is allegedly required to submit scripts through agencies such as Gold if it wishes to have those scripts made into films, and since Gold has "far superior 'knowledge, [s]kill and expertise' in handling matters of the entertainment industry," plaintiff claims that it has established "a unique degree of trust" between itself and Gold. Pl's Opp. Memo, [Doc. # 56] at 7. Gold, in turn, argues that there is no factual predicate for any fiduciary relationship between the parties and that under California law, the circumstances of the transaction between the parties "are insufficient to impose upon [the defendant] the fiduciary-like duties that arise from a confidential relationship." *Davies v. Krasna,* 14 Cal.3d 502, 511, 121 Cal.Rptr. 705, 711, 535 P.2d 1161 (Cal.1975).

California law recognizes two types of fiduciary duties; fiduciary duties imposed by law and fiduciary duties undertaken by agreement. *See GAB Bus. Services, Inc. v. Lindsey & Newsom Claim Services, Inc.,* 83 Cal.App.4th 409, 416, 99 Cal. Rptr.2d 665, 669 (Cal.Ct.App.2000); *City Solutions, Inc. v. Clear Channel Communications, Inc.,* 201 F.Supp.2d 1048, 1050 (N.D.Cal.2002). "It is a well-settled principle that parties to a contract do not by necessary implication become fiduciaries." *City Solutions,* 201 F.Supp.2d at 1049. "Nor are fiduciary obligations imposed simply because the parties to a contract reposed trust and confidence in each other." *Id.; accord Girard v. Delta Towers Joint Venture,* 20 Cal.App.4th 1741, 1749, 26 Cal.Rptr.2d 102 (1993).

"Fiduciary duties are imposed by law [only] in certain technical legal relationships such as those between partners or joint venturers, ... husbands and wives ... guardians and wards, trustees and beneficiaries, principals and agents, and attorneys and clients." *GAB Bus. Services, Inc.,* 83 Cal.App.4th at 416, 99 Cal.

Rptr.2d at 669. No specialized type of relationship is alleged in this case.

■■■■ "A confidential relationship arises where a confidence is reposed by one person in the integrity of another, and ... the party in whom confidence is reposed ... voluntarily accepts or assumes to accept the confidence." *Id.* (internal citations omitted). Under California law, " 'the essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party.' " *City Solutions,* 201 F.Supp.2d at 1050 (citing *Barbara A. v. John G.,* 145 Cal.App.3d 369, 383, 193 Cal.Rptr. 422, 432 (Cal.Ct.App. 1983)). Plaintiff's claims of Gold's "far superior 'knowledge, [s]kill and expertise' in handling matters in the entertainment industry," Pl's Opp. Memo [Doc. # 56] at 7, is insufficient to establish a confidential relationship absent any allegation of conduct from which either Gold's acceptance of Slice of Pie's trust and confidence or Gold's being in a position to exert influence over Slice of Pie could be inferred. Plaintiff's claim that industry custom required Gold to notify Slice of Pie if Wayans used the screenplay does not translate into a confidential or fiduciary relationship, particularly because Gold was recognized by plaintiff as Wayans' agent.

While Gold may have had an obligation not to disclose the contents of plaintiff's screenplay to unauthorized persons, that does not confer a fiduciary obligation under California law. *See Davies,* 14 Cal.3d at 511, 121 Cal.Rptr. at 711, 535 P.2d 1161 (holding, in a case regarding a transaction between a screenwriter and a movie producer, both "engaged in the business of selling and exploiting ideas for movies," that the circumstances in the case might "impose upon defendant a duty to refrain from unauthorized disclosure of the idea, but they are insufficient to impose upon him the fiduciary-like duties that arise from a confidential relationship"). Thus, no claim for breach of fiduciary duty is stated against Gold and its motion to dismiss Count VI of the complaint is granted.

### 3. Count VII: CUTPA Violation Against Gold

■■■ Slice of Pie claims that Gold violated the Connecticut Unfair Trade Practices Act ("CUTPA") by failing to notify plaintiff that Wayans was making a movie based on the *Johnny Bronx* screenplay. Plaintiff claims that Gold's breach of fiduciary duty and use of the screenplay deceived plaintiff and the public and thus violated Conn. Gen.Stat. § 42–110b. Relying on *City of Bridgeport v. Aerialscope,* 122 F.Supp.2d 275 (D.Conn.2000), and *Boulevard Assocs. v. Sovereign Hotels,* 72 F.3d 1029 (2d Cir.1995), Gold argues that this claim of breach of contract is insufficient to support a CUTPA violation because it fails to allege the kind of aggravating circumstances necessary to support such a claim. Def. Gold/Miller Memo [Doc. # 53] at 11–13.

The central prohibition of CUTPA is that:

> no person shall engage in unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce. In determining whether a given action is "unfair" the Connecticut Supreme Court has adopted the so-called "cigarette rule" developed by the Federal Trade Commission.... According to the cigarette rule, a court must consider: 1) Whether the practice, without necessarily having been previously been determined unlawful, offends public policy ...; 2) whether it is immoral, unethical, oppressive, or unscru-

pulous; 3) whether it causes substantial injury to consumers.

*City of Bridgeport,* 122 F.Supp.2d at 277–78 (internal quotation and citation omitted).

Plaintiff argues that sufficient aggravating circumstances exist to establish a CUTPA violation. Plaintiff alleges that Gold both failed to notify Slice of Pie that Wayans was using its screenplay and made affirmative representations that Wayans was not interested. However, plaintiff does not allege that Gold knew its statement was false or knew that Wayans was in fact using plaintiff's screenplay at that time. While plaintiff correctly cites *Daddona v. Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 258, 550 A.2d 1061 (1988), for the proposition that subjective good faith is not a defense under CUTPA, plaintiff has not alleged any sort of fraud, deception, or violation of public policy by Gold. Plaintiff makes no specific factual allegations with respect to Gold sufficiently "aggravating" to state a claim for a CUTPA violation. Gold's motion to dismiss count VII of the complaint is therefore granted.

### 4. Count IV: Violations of the Lanham Act Against Wayans, Revolution, and Sony

 Plaintiff also asserts claims that defendants Wayans, Revolution, and Sony violated the Lanham Act by misrepresenting the true origin of their *White Chicks* film. *See* Proposed Fourth Amended Complaint [Doc. # 58, Ex. A] at ¶ 52. Defendants move to dismiss under *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003), on the grounds that the Lanham Act applies only to tangible goods and not to the copyrighted ideas contained therein. Slice of Pie counters that *Dastar* applies only to non-copyrighted works.

Under the Lanham Act, § 43(a),

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or representation of fact which -

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion represents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1).

In *Dastar,* the Supreme Court examined the meaning of the term "origin . . . of . . . goods" in § 43(a) and held that "the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." 539 U.S. at 37, 123 S.Ct. 2041. "[A]s used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 32, 123 S.Ct. 2041. The Supreme Court reasoned that the Lanham Act was designed to protect consumers who buy products by brand name and it "should not be stretched to cover matters that are typically of no consequence to purchasers." *Id.* at 32–33, 123

S.Ct. 2041.[5] Further, the Court held that while a purchaser of a communicative product such as a book or a film may in fact care about the identity of the creator of the concepts therein, the Lanham Act nonetheless does not apply to such intellectual work because, if it did, it would conflict with copyright law which is designed to address the subject directly. *Id.* at 33–35, 123 S.Ct. 2041 ("A statutory interpretation that renders another statute superfluous is of course to be avoided.").

Analogizing to *Dastar*, if plaintiff here had produced a film of *Johnny Bronx* and released it on video cassette, and if defendants had then purchased copies of the *Johnny Bronx* video and repackaged them as *White Chicks* videos for sale to the public, plaintiff would have a Lanham Act claim. However, where defendants are alleged only to have appropriated "the originality" of the screenplay, the Lanham Act does not apply.

Plaintiff tries to distinguish its case from *Dastar* because *Dastar* dealt with a television series that had fallen into the public domain. Plaintiff reasons, in essence, that since the series was no longer eligible for copyright protection it was also no longer eligible for protection under the Lanham Act. However, the clear import of *Dastar* is that any protection for the misappropriation of its content comes from the Copyright Act, not from the Lanham Act. In fact, *Dastar* progeny have expressly re-jected plaintiff's copyright/no copyright distinction and applied *Dastar* to claims concerning copyrighted works. *See, e.g., Williams v. UMG Recordings, Inc.,* 281 F.Supp.2d 1177, 1185 (C.D.Cal.2003) ("To the contrary, the Supreme Court's holding did not depend on whether the works were copyrighted or not."); *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 148–49 (5th Cir.2004) (applying Dastar to a claim regarding copyrighted work).

Finally, plaintiff contends that even if Sony and Revolution could not have violated the Lanham Act because they never possessed a tangible good produced by Slice of Pie, Wayans can be held liable because it actually possessed the screenplay. However, plaintiff alleges no facts stating or even suggesting that Wayans attempted to sell the physical manuscript of *Johnny Bronx* to Revolution or Sony; rather, plaintiff's claim is that Wayans misappropriated—or copied—the ideas of its screenplay. Indeed, the complaint itself identifies differences between *Johnny Bronx* and *White Chicks,* precluding any conclusion that Wayans attempted to pass off the physical script for *Johnny Bronx* as its own.

Accordingly, while plaintiff's allegations are sufficient to state a Copyright Act violation, plaintiff has failed to state a claim under the Lanham Act. Defendants'

---

**5.** The Court reasoned that the Lanham Act would apply to protect consumers if Coke bottled Pepsi as its own product, because the consumer would believe that it was buying a Coca–Cola product, but "surely [the consumer] does not necessarily believe that [Coca–Cola] was the 'origin' of the drink in the sense that it was the very first to devise the formula. The consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—and typically does not care whether it is." *Id.* at 32, 123 S.Ct. 2041. The *Dastar* Court discussed this concept in the context of a book or a movie where, it could be argued, the author of the product has "at least as much interest in avoiding passing off (or reverse passing off) as does the publisher [or producer]," but concluded that nevertheless "[w]hen Congress has wished to create such an addition to the law of copyright, it has done so with much more specificity than the Lanham Act's ambiguous use of 'origin'." *Id.* at 33–34, 123 S.Ct. 2041.

motion to dismiss the Lanham Act claims is granted.

### 5. Count VI: Breach of Fiduciary Duty Against Wayans

Plaintiff's Proposed Fourth Amended Complaint seeks to add a claim for breach of fiduciary duty against Wayans. As discussed above, California law would apply to this claim.

■■■ Because no relationship indicative of a fiduciary duty imposed by law is alleged, the Court looks to whether plaintiff's allegations could support the inference that Wayans undertook a fiduciary duty by agreement by entering into a confidential relationship with Slice of Pie. *See GAB Bus. Servs.*, 83 Cal.App.4th at 416–17, 99 Cal.Rptr.2d at 669–70; *City Solutions*, 201 F.Supp.2d at 1050. Plaintiff claims that it had an implied contract with Wayans, including a covenant of good faith and fair dealing, which was breached when Wayans disclosed plaintiff's screenplay to unauthorized persons. This alone, however, is insufficient to create the confidential relationship on which a fiduciary duty may be based. *See Davies*, 14 Cal.3d at 511, 121 Cal.Rptr. at 711, 535 P.2d 1161.

Wayans' only contact with plaintiff was to solicit its script through Gold and there is no allegation from which Wayans' voluntary acceptance of Gold's trust can be inferred. Wayans and Slice of Pie stood in the roles of two independent entities who might potentially mutually exploit a film idea for profit. No further relationship existed between them. To conclude that Wayans' sophistication in the entertainment industry relative to plaintiff's inexperience could create a fiduciary relationship would be to strip that legal relationship and resultant duty of any meaning or purpose.

The proposed fiduciary duty count against Wayans (Count VI) is not legally viable. Plaintiff's motion for leave to amend its complaint is thus denied as to this count on grounds of futility.

### 6. Count VII: CUTPA Violation Against Wayans, Revolution, or Sony

Count VII of the Proposed Fourth Amended Complaint also alleges violations of CUTPA against Wayans, Revolution, and Sony for their alleged misappropriation of plaintiff's screenplay, their alleged passing off of plaintiff's screenplay, and for Wayans' alleged breaches of contract and fiduciary duty. Defendants Wayans, Revolution, and Sony argue that Slice of Pie's CUTPA claims are preempted by the Copyright Act. Slice of Pie counters that its allegations that Wayans breached its fiduciary duty and that defendants passed off plaintiff's screenplay as their own are sufficient to preclude preemption of its CUTPA count.

Section 301(a) of the Copyright Act provides that:

> On and after January 1, 1978, all legal or equitable rights that are the equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes or any State.

17 U.S.C. § 301(a). State statutory and common law causes of action are preempted by the Copyright Act when "(1) the particular work to which the claim is being

applied falls within the type of works protected by the Copyright Act ... and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd. v. Phoenix Pictures,* 373 F.3d 296, 305 (2d Cir.2004). "The first prong of this test is called the 'subject matter requirement' and the second prong is called the 'general scope requirement.'" *Briarpatch Ltd.,* 373 F.3d at 305.

Under the Copyright Act, literary works are subject to copyright "regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101; *see also* 17 U.S.C. § 102(a). The Second Circuit has treated screenplays as copyrighted works, *see e.g., Shoptalk, Ltd. v. Concorde–New Horizons Corp.,* 168 F.3d 586, 587 (2d Cir.1999), and the parties agree that plaintiff's screenplay is subject to copyright protection. Thus, the subject matter prong of the preemption test is met.

Under the general scope requirement, a claim is preempted only when "the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch Ltd.,* 373 F.3d at 305. Thus, to be preempted, the state law claim "must involve acts of reproduction, adaptation, performance, distribution or display." *Id.; see also* 17 U.S.C. § 106 (delineating the exclusive rights within the general scope of the Copyright Act). While a state law claim that alleges an extra element that makes it "qualitatively different from a copyright infringement claim may not be preempted," *Briarpatch Ltd.,* 373 F.3d at 305–06, courts have taken "a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Id.* at 306.

Slice of Pie's CUTPA claims arise from the same circumstances as its copyright claims, specifically, that Wayans used plaintiff's screenplay ideas in a film that defendants distributed nationally. The Second Circuit has held that claims of unfair competition and misappropriation, such as CUTPA claims, based "solely in the copying of a plaintiff's protected expression" are preempted, but that claims "based upon breaches of confidential relationships [or] breaches of fiduciary duty ... satisfy the extra-element test," and are therefore not preempted. *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir. 1993). Plaintiff relies on this exception, but without success, as this Court has found that no confidential relationship or fiduciary duty has been alleged to exist.

Legally sufficient claims based on a theory of "passing off" will also escape preemption. *See Warner Bros., Inc. v. Am. Broad. Co.,* 720 F.2d 231, 247 (2d Cir. 1983). Slice of Pie alleges that Wayans passed off its screenplay and argues that because the purported subjective good faith of Revolution and Sony is insufficient to avoid CUTPA liability, its CUTPA claim survives preemption. The Connecticut Supreme Court has never considered a "reverse passing off" claim in the CUTPA context, including whether using copyrighted expression in a product could constitute passing off. As discussed above, pursuant to the Supreme Court's opinion in *Dastar,* 539 U.S. at 32, 123 S.Ct. 2041, passing off and reverse passing off claims under the Lanham Act pertain only to physical goods, not their intellectual property content. This Court sees no basis for applying any other concept of passing off, or reverse passing off, in the context of a CUTPA claim.

Thus, to the extent that Slice of Pie claims that Wayans adapted its screenplay for *White Chicks* from the *Johnny Bronx* screenplay, it does not allege a passing off or reverse passing off claim sufficient to survive preemption, absent any allegation that Wayans sold plaintiff's actual screenplay as its own.[6] Plaintiff's conclusory statement of law that defendants "deceiv[ed] the public as to the true source and nature of the screenplay and [passed] the screenplay ... off as its own," Proposed Fourth Amended Complaint [Doc. # 58, Ex. A] ¶ 66, is insufficient, particularly where plot differences between the screenplays are also alleged, precluding a passing off or reverse passing off claim and making clear that this is in reality a "disguised copyright infringement claim." [7] Defendants' motion to dismiss count VII of the complaint as preempted is therefore granted.

### 7. Count I: Idea Misappropriation Against Wayans

 Wayans moves to dismiss the misappropriation claim both because it is preempted and because plaintiff has failed to state a claim. In *National Basketball Association v. Motorola, Inc.*, (105 F.3d 841 (2d Cir.1998)), the Second Circuit held that misappropriation claims fail to allege an extra element beyond copyright claims, and are thus preempted, when they are "virtually synonymous" with wrongful copying of a plaintiff's copyright-protected expression. 105 F.3d at 851. Here, plaintiff asserts that Wayans misappropriated

plaintiff's screenplay and used its ideas to create *White Chicks*. These allegations constitute no more than a claim of unauthorized copying of plaintiff's protected ideas actionable under the Copyright Act and thus plaintiff's claim is preempted.

Plaintiff cannot avoid preemption by dismissing its copyright claim against Wayans. It is clear that the preemption provisions of the Copyright Act apply to state law claims seeking protection of equivalent rights, whether or not the plaintiff has contemporaneously asserted a copyright infringement claim. *See Briarpatch Ltd.*, 373 F.3d at 304–07 (holding that declaratory judgment and unjust enrichment claims were preempted notwithstanding that plaintiff did not assert a copyright claim).

Accordingly, plaintiff's claim of idea misappropriation is preempted and defendants' motion to dismiss Count I is granted.

### 8. Count V: Conversion Against Wayans

 Count V alleges a claim of conversion against defendant Wayans for its alleged wrongful exercise of control over the screenplay. Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act ... and damages." *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543–

---

6. Additionally, on the facts alleged in this case no such claim could be made against Revolution or Sony, since plaintiff has made no allegation that either party ever possessed a physical copy of its screenplay.

7. *See* 1 Nimmer on Copyright § 1.01(B)(1)(e) ("[If] B is selling B's products and representing to the public that they are A's, that is passing off. If by contrast, B is selling B's

products and representing to the public that they are B's, that is not passing off. A claim that the latter activity is actionable [as a deceptive trade practice cause of action] because B's product replicates A's, even if denominated 'passing off,' is in fact a disguised copyright infringement claim, and hence preempted.").

44, 50 Cal.Rptr.2d 810 (1996). Slice of Pie twice sent copies of its screenplay to California in the hope that Wayans would produce a movie based on the screenplay. There is no suggestion in the complaint that Wayans was ever unauthorized in possessing a copy of plaintiff's screenplay or that Wayans' possession of a copy of the screenplay in any way infringed plaintiff's ownership of it. In fact, plaintiff alleges it was able to secure financing from two other producers for a film based on the screenplay. At no time did plaintiff, even after learning of defendant's alleged misuse of the screenplay, demand that it be returned. Even now, plaintiff seeks only monetary damages.

Plaintiff's use of the word "convert[ ]" (Pl's Opp. Memo at 2)—in the demotic sense that Wayans turned the *Johnny Bronx* screenplay into the *White Chicks* screenplay—represents a basic misunderstanding of the tort of conversion. Moreover, even a viable conversion claim would be preempted by the Copyright Act since it is based solely on copying, i.e. wrongful use, not wrongful possession.[8] Accordingly, absent any allegation of wrongful possession, plaintiff has failed to state a claim for conversion. Thus, Wayans' motion to dismiss Count V of the complaint is granted.

## III. CONCLUSION

Defendants' motions to dismiss [Docs. ## 26, 35, 52] are granted in part and denied in part as specified above. Defendants' motions to transfer venue [Docs. ## 28, 33, 52] are denied. Plaintiff's motion for leave to amend its Complaint [Doc. # 58] is granted in part and denied as to the additional claim in Count VI for breach of fiduciary duty against Wayans, as discussed above.

Plaintiff shall file a substituted Fourth Amended Complaint that complies with this ruling within 10 days and it shall be docketed. Defendants' answers shall be filed 10 days following such filing. The parties shall file a Rule 26(f) report within 14 days.

IT IS SO ORDERED.

---

8. State law conversion claims are not *per se* preempted. When a claim is based upon the possession of chattel, it alleges an extra element and thus avoids preemption. *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *see also Worth v. Universal Pictures, Inc.*, 5 F.Supp.2d 816, 822 (C.D.Cal.1997) ("[I]n order to bring an action for conversion, there must be a wrongful possession of the work."). However, when the right that plaintiff seeks to protect is "coextensive" with rights protected by the Copyright Act, a claim of conversion is preempted. *See Harper & Row Publishers*, 723 F.2d at 201 ("If unauthorized publication is the gravamen of [plaintiff's] claim, then it is clear that the right they seek to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act.").